IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CV-683-D

| | |
|---|---|
| KAMI POPE EASON, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-18, -20] pursuant to Fed. R. Civ. P. 12(c). Claimant Kami Pope Eason ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her application for Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability, disability insurance benefits ("DIB"), and SSI on January 10, 2011, alleging disability beginning July 18, 1990. (R. 217-29, 248). Both claims were denied initially and upon reconsideration. (R. 75-125). A hearing before an Administrative Law Judge ("ALJ") was held on December 18, 2012, at which Claimant represented by counsel and a vocational expert ("VE") appeared and testified. (R. 32-74). At the hearing,

Claimant amended her alleged onset date to January 10, 2011, the date of her SSI application, and withdrew her claim for a period of disability and DIB. (R. 18, 38-39). On February 11, 2013, the ALJ issued a decision denying Claimant's request for benefits. (R. 18-31). On July 31, 2013, the Appeals Council denied Claimant's request for review. (R. 1-5). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling*

*Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(3).

In this case, Claimant alleges the ALJ improperly assessed her Residual Functional Capacity ("RFC"). Pl.'s Mem. [DE-19] at 9-13.

3

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 21). Next, the ALJ determined Claimant had the following severe impairments: degenerative disc disease, osteoarthritis, history of fracture to the right arm in August 2012, mild left rotator cuff disorder, depression, anxiety disorder, attention deficit hyperactivity disorder ("ADHD"), personality disorder, and history of alcohol abuse and prescription drug abuse. *Id.* The ALJ also found Claimant had nonsevere impairments of chronic obstructive pulmonary disorder ("COPD"), headaches, gynecological issues, different types of strains and sprains, hypothyroidism, history of fibromyalgia, osteoarthritis of the hands, history of post traumatic stress disorder ("PTSD"), and bipolar disorder. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 22-23). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in moderate limitations in her activities of daily living, social functioning and concentration, persistence and pace, with no episodes of decompensation. *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work except that she is limited to frequent, not constant, use of the bilateral upper extremities for grasping and handling bilaterally; can understand, remember, and carry out short and simple instructions for two hours at a time, for eight hours a day in a low stress, non-production rate job; cannot work in close proximity to coworkers, which means she cannot

4

function as a member of a team; and the work cannot be performed in direct contact with the public, meaning the contact is incidental and not a primary factor of the job.[1] (R. 24-29). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 24).

At step four, the ALJ concluded Claimant had no past relevant work. (R. 29). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 29-30).

## B.     Claimant's Testimony at the Administrative Hearing

Claimant was 51 years old at the time of the administrative hearing. (R. 39). Claimant does not work and lives alone in a home provided by her mother, receiving food stamps and assistance with her bills from family members, social services and churches. (R. 40-41). Claimant has a driver's license but does not own a car and sometimes borrows one. (R. 42). Claimant has no past relevant work. *Id.*

Claimant testified to a number of conditions that prevent her from working. Claimant experiences extreme depression. (R. 43). She feels "shaky" inside and without medicine would cry most days. *Id.* Claimant has mood swings, is easily upset, aggravated and frustrated and finds it difficult to socialize with others or to go out in public. (R. 43-44, 46). Claimant at times cannot

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 416.967(b).

leave her home, is not involved in clubs, and has no regular contact with friends. (R. 45). She experiences anxiety, which causes pain in her chest and difficulty breathing. (R. 43-44). Claimant also has difficulty with concentration and memory. (R. 45, 47). She lacks energy and does not want to get out of bed in the morning. (R. 55). Claimant has a history of alcohol use, but had not consumed alcohol in more than a year and a half. (R. 40).

Claimant experiences pain and weakness in her hands, particularly in her wrists and knuckles, which affects her ability to grip and open bottles. (R. 48-49). Claimant estimated that she could write for less than ten minutes at a time and would not be able to do other activities utilizing her hands for very long. (R. 49-50). Sometimes she just drops things she is holding, like coffee cups. (R. 50). Claimant also has pain in her shoulders that restricts her mobility, for example she cannot raise her arms above her head or out in front of her body. *Id.* Claimant has pain in her neck and has difficulty moving her head from side to side or up and down. (R. 51). She has pain in her lower back and at times cannot stand up from a seated position. (R. 52). Activity, such as walking to the trash can, or sitting worsens her pain. (R. 53). Claimant can stand for approximately 15 to 20 minutes before needing a break and has fallen at times because her knees give out. (R. 54). Claimant fractured her right wrist and still has swelling and pain as a result. (R. 55).

Claimant spends her days at home watching television. *Id.* Her elderly aunt visits and tries to help Claimant. (R. 55-56). Claimant sometimes cooks frozen dinners, and when she has visitors they often cook and clean. (R. 56). Claimant does her own laundry but lets it "pile up" and sometimes, but not often, washes dishes and makes the bed. (R. 56-57). Claimant can attend to her own personal hygiene and grooming. (R. 57-58). Claimant sleeps on average 12 hours per night, but sometimes sleeps all day. (R. 58-59).

## C. Vocational Expert's Testimony at the Administrative Hearing

Nancy Hayward, a vocational expert, testified at the administrative hearing. (R. 59-70). The ALJ posed the following hypothetical to the VE:

> Assuming and individual who can lift and carry up to 20 pounds occasionally, 10 pounds frequently; stand and walk with normal breaks for at least six hours in an eight hour workday; sit for six hours with normal breaks in an eight hour workday; can understand, remember, and carry out short, simple instructions for two hours at a time, eight hours a day in a low stress, non-production rate job; requires work that is not performed in close proximity to co-workers meaning that the individual cannot function as a member of a team; it also requires work that is not performed in close, in direct contact with the public meaning that contact with the public is incidental and not a primary factor in the job. Can you identify jobs that such an individual can perform?

(R. 60). The VE responded affirmatively that such a person could perform the occupations of machine egg washer, DOT code 529.686-030, light in exertion and unskilled with an SVP of 1; plugger, DOT code 764.687-098, light in exertion and unskilled with an SVP of 1; and electrode cleaner, DOT code 729.687-014, light in exertion and unskilled with an SVP of 1. (R. 60-61). The ALJ then added the additional limitation of frequently but not continuously using the bilateral upper extremities for grasping and handling, and the VE opined that all three jobs could still be performed. (R. 61). The ALJ next added a sit/stand option at one hour intervals, and the VE indicated the DOT does not speak to such a limitation but in her opinion the listed jobs would not accommodate a sit/stand option. *Id.* However, the VE indicated that the following jobs would accommodate an at will sit/stand option: basket filler, DOT code 529.687-010, light in exertion and unskilled with an SVP of 1; small products assembler, DOT code 706.684-022, light in exertion and unskilled with an SVP of 2; and inspector and hand packager, DOT code 559.687-074, light in exertion and unskilled with an SVP of 2. (R. 62). The ALJ inquired as to whether an individual who could carry

out short, simple instructions for less than two hours at a time was employable, and the VE responded in the negative. (R. 63). The ALJ also inquired as to whether a person limited to occasional grasping and handling with the mental limitations from the initial hypothetical could perform work at the light or any other level, and the VE responded in the negative. *Id.*

Claimant's counsel posed the following hypothetical to the VE:

> [S]uppose the hypothetical individual could do no more than occasional reaching, pushing, and pulling and no more than occasional overhead lifting bilaterally, and further assume that this hypothetical individual is not able to work with small objects.

(R. 64). The VE responded that those combined limitations would eliminate all jobs. *Id.* In response to further questioning by Claimant's counsel, the VE indicated that the limitation of not working around hazards, such as extreme heat or cold, cleaner, toxins, moving machinery or dangerous machinery would have no effect on any of the jobs previously listed. *Id.* The VE indicated that a limitation to less than occasional stooping would eliminate the jobs of machine egg washer, electrode cleaner, basket filler, and inspector hand packager, but not the jobs of plugger or small products assembler. (R. 65-66). The VE also indicated that a limitation to lifting less than ten pounds would eliminate all jobs. (R. 67). The VE acknowledged as a general proposition that the majority of jobs do not accommodate a sit/stand option, but confirmed that the jobs she indicated earlier in response to the ALJ's third hypothetical allowed for a sit/stand option. (R. 68-70).

## V. DISCUSSION

### A. The ALJ's RFC Assessment

Claimant contends the ALJ erred in assessing her RFC by failing to reconcile the RFC with the findings of Dr. John Midgley, a DDS consulting physician who examined Claimant on May 31,

8

Case 5:13-cv-00683-D   Document 24   Filed 12/29/14   Page 8 of 14

2011. Pl.'s Mem. at 9-13; (R. 333-38). The government contends that the ALJ sufficiently explained her reasons for discounting Dr. Midgley's opinion and that substantial evidence supports the RFC determination. Gov't's Mem. [DE-21] at 9-12.

An individual's RFC is defined as the capacity which an individual possesses despite the limitations caused by his or her physical or mental impairments. 20 C.F.R. § 416.945(a)(1); *see also* SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC assessment is based on all the relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 416.945(a)(3); *see also* SSR 96-8p, 1996 WL 374184, at *5. When a claimant has a number of impairments, including those deemed not severe, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (citations omitted) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments."). Sufficient consideration of the combined effects of a claimant's impairments is shown when each is separately discussed by the ALJ and the ALJ also discusses Claimant's complaints and activities. *See Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7.

In this case, Claimant contends that Dr. Midgley's examination demonstrates that she cannot stand or walk for extended periods of time, cannot lift ten pounds, cannot stoop or squat, and that her emphysema and COPD limit her stamina. Pl.'s Mem. at 10-11. The ALJ rejected Dr. Midgley's

9

opinion, and Claimant contends the ALJ's justification for doing so is not supported by the evidence.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. *Id.* § 416.927(c)(2). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006), she must nevertheless explain the weight accorded such opinions. *See* SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996).

The ALJ evaluated Dr. Midgley's opinion as follows:

> No weight is given to Dr. Midgley's opinion, as he concluded after his consultative examination on May 31, 2011 that the claimant could not stoop and that she could not lift a ten-pound stool because of difficulty with bending (Exhibit 4F). He concluded the claimant had malnutrition and deconditioning due to substance abuse, but the overall records show normal body mass index levels ranging from 22.1 to 23.3 (See Exhibits. 11F/1 & 13F/16). Furthermore, Dr. Midgley noted normal physical examination findings overall, which is inconsistent with his own opinion. However, his clinical findings show that there is no basis to limit the claimant to only "occasional" fingering and grasping, as he noted normal upper extremity findings except for the left shoulder.

(R. 28). The ALJ acknowledged Dr. Midgley's opinion that Claimant could not stoop or lift a ten-pound stool, but found these limitations inconsistent with Dr. Midgley's own examination findings. *Id.* A review of Dr. Midgley's opinion and other evidence in the record reveal no error in the ALJ's rejection of this opinion.

First, while Dr. Midgley did observe that Claimant could not stoop or lift a ten-pound stool,

10

he attributed this failure to Claimant becoming dizzy when she bent forward rather than to muscular weakness or limited range of motion. (R. 337). As the Commissioner points out, there are no complaints of or treatment for dizziness in the record and Claimant denied weakness or dizziness on other occasions. Gov't's Mem. at 12 (citing R. 513, 531, 551); *see also* (R. 543 (October 31, 2011 - no muscle weakness and normal inspection of back, upper and lower extremities); R. 625 (Aug. 28, 2012 - negative for dizziness and weakness)). The ALJ also noted Dr. Midgley's findings that Claimant had some limited range of motion in her left shoulder, but full range of motion in her other joints of the upper and lower extremities and normal muscle strength. (R. 25, 336). Accordingly, the ALJ did not err in declining to further limit Claimant's RFC based on Dr. Midgley's observation that Claimant could not stoop or lift a ten-pound stool.

Next, Claimant contends the low level reconditioning exercises recommended by Dr. Midgley are inconsistent with the ALJ's finding that Claimant can walk and stand for up to six hours in an eight-hour day. Pl.'s Mem. at 11. While Dr. Midgley observed Claimant was unsteady when she attempted to tandem walk, he also noted she had a normal gait and recommended reconditioning exercises, beginning with five to ten minute walks, progressing to 30 to 45 minutes. (R. 337-38); *see also* (R. 625 (Aug. 28, 2012 - normal gait, ambulating with no aide)). However, the ALJ found Dr. Midgley's physical examination findings to be overall "normal" and, thus, inconsistent with his opinion. (R. 25, 28). Claimant also asserts that Dr. Midgley's physical findings of limited range of motion in the left shoulder, Heberden's and Bouchard's nodes over the DIP and PIP joints in both hands, and a positive Lasegue's test bilaterally support further restrictions and were ignored by the ALJ. Pl.'s Mem. at 12. The ALJ noted Dr. Midgley's finding that Claimant had some trouble with range of motion with her left shoulder and cited her "history of upper extremity injury that

11

reasonably can affect her ability to lift, carry" in limiting her to lifting 20 pounds occasionally and ten pounds frequently and to frequent, but not constant, handling and fingering. (R. 25-26). Furthermore, despite the nodes Dr. Midgley noted on Claimant's hands, he also indicated that Claimant could open and close the door using the doorknob and button and unbutton her clothes, and Dr. Midgley did not suggest any functional limitation as a result of the nodes. (R. 336-38).

It is the ALJ's responsibility to weight the evidence and resolve contradictions. *See Trapp v. Colvin*, No. 5:12-CV-803-D, 2013 WL 6178538, at *4 (E.D.N.C. Nov. 25, 2013) ("[A]ssessing physicians' opinions in light of the objective medical evidence is what ALJs are supposed to do."). The ALJ provided a detailed explanation of the medical evidence and provided valid reasons for discounting Dr. Midgley's opinion and Claimant's subjective complaints. *See, e.g.*, (R. 24 ("[Claimant] has reported significant pain for many years, but her physical exams have been generally normal and her medications have rarely been changed."); R. 25 ("[Claimant's] primary provider Dr. Oudeh consistently noted normal physical examination findings (Exhibit 6F/102 and throughout 6F)."); R. 26 ("[Claimant's] physical examinations reveal no reason she cannot stand and/or walk for six hours of an eight-hour work day . . . with normal breaks.")). Accordingly, the ALJ did not err in declining to further limit Claimant's ability to walk and stand or use her hands based on Dr. Midgley's opinion.

Finally, Claimant contends the ALJ did not consider Claimant's emphysema and COPD in the RFC assessment and that light work "requires very good stamina." Pl.'s Mem. at 12. Claimant cites to no evidence in the record to support her assertion that emphysema or COPD limit her functionality to less than light work, and the ALJ determined that Claimant's COPD was nonsevere, noting that "throughout the entire period at issue . . . [Claimant's] physical exams have shown

12

normal breathing sounds (Exhibit 15F/10)." (R. 21). *See Bryant v. Astrue*, No. 7:11-CV-00054-D, 2012 WL 895425, at *5 (E.D.N.C. Feb. 10, 2012) (rejecting conclusory argument that the ALJ erred in failing to consider COPD in the RFC assessment where claimant failed to cite evidence in the record supporting a limitation based on the alleged impairment and the ALJ found the impairment to be non-severe), *adopted by*, 2012 WL 896147 (E.D.N.C. Mar. 15, 2012). Moreover, the ALJ stated that "claimant's non-severe impairments have been considered in combination with her severe impairments in assessing the claimant's residual functional capacity" (R. 22), and Claimant has provided no persuasive argument undermining this statement. *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) ("The Commissioner, through the ALJ and Appeals Council, stated that the whole record was considered, and, absent evidence to the contrary, we take her at her word."). Accordingly, the ALJ did not err in failing to further limit Claimant's RFC based on emphysema or COPD and any error in failing to specifically discuss these conditions in the RFC analysis was harmless.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-18] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-20] be ALLOWED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected

to, and accepted by, the District Court.

Submitted, this the 29th day of December 2014.

Robert B. Jones, Jr.
United States Magistrate Judge